**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KATIA NICOLAS,

               Plaintiff,

                -against-

                                     **COMPLAINT**

buildON, INC.; LANELLE ALEXANDER;
ROSANN JAGER; SORANGEL LIRIANO;
CHRISTOPHER LINDSTROM; and JOHN
SOREK in their individual capacities and as    **JURY TRIAL DEMAND**
aiders and abettors

                   Defendants.

       PLAINTIFF, KATIA NICOLAS ("NICOLAS" or "PLAINTIFF") by and through her attorney, SPECIAL HAGAN, ESQ.,  complains of Defendants:  buildOn, Inc. ("buildOn"); LANELLE ALEXANDER ("ALEXANDER"); ROSANN JAGER ("JAGER"); SORANGEL LIRIANO ("LIRIANO"); CHRISTOPHER LINDSTRON ("LINDSTROM"); and JOHN SOREK ("SOREK") in their individual capacities and as aiders and abettors.

## I.    INTRODUCTORY STATEMENT

1. This is an action for injunctive relief, declaratory judgment, equitable relief, money damages and punitive damages on behalf of PLAINTIFF, KATIA NICOLAS (NICOLAS or PLAINTIFF).  NICOLAS contends that she experienced: racial discrimination; discrimination based on her national origin and color; a hostile work environment based on her race, color and national origin; a continuing violation of her rights; and an ongoing retaliatory hostile work environment based on her protected statuses and protected activities.

1

2. PLAINTIFF alleges that the terms, conditions and privileges of her employment relationship with Defendants have been adversely affected under:  First Amendment of the United States Constitution; 42 U.S.C. § 1981; 42 U.S.C. 1983; 42 U.S.C. § 1988; the New York State Human Rights Law as contained in New York Executive Law § 296 et. seq. ("NYSHRL"); and the New York City Human Rights Law 8-107(1) et. seq. ("NYCHRL")

## II.      JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to §§ 1331 and 1343 to secure protection of and to redress the deprivation of rights secured by: First Amendment of the United States Constitution; § 1983; and § 1981.

4. This Court has supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1367(a) over the PLAINTIFF'S state and city law claims arising under the New York State Executive Law and the New York City Administrative Code respectively, because the PLAINTIFF'S federal, state and city claims derive from a common nucleus of operative facts and form part of the same case or controversy.

5. PLAINTIFF's action for declaratory relief is authorized by 28 U.S.C. §§ 1343, 2201 and 2202.

## III.      PARTIES

6. NICOLAS is an African-American female.

7. NICOLAS's national origin is Haiti.  Her parents are from Les Cayes, Haiti and she identifies as being of Haitian descent.

8. PLAINTIFF identifies as a "dark" complexioned African American woman, and alleges that she also experienced discrimination based on her color.

9. At all times relevant, PLAINTIFF is an employee within the meaning of §§ 1981, 1983 and the other statutes referenced herein.

10. NICOLAS is a resident of the State and City of New York.

11. At all times relevant, buildON Inc.,  (buildOn) is an employer within the meaning of §§ 1983, 1981 and the other applicable statutes referenced herein.

12. At all times relevant, Defendant buildOn is a 501(c )(3) that is authorized to do business in the County, City and State of New York.

13. At all times relevant, Defendant buildOn has employed approximately 200 to 250 employees.

14. At all times relevant, DEFENDANT LANELLE ALEXANDER ("ALEXANDER") served as the Vice President of Human Resources and the Diversity, Equity and Inclusion.

15. At all times relevant, ALEXANDER, had the ability to affect the terms and conditions of PLAINTIFF'S employment.

16. At all times relevant, ALEXANDER, had the ability to hire, fire, promote and or demote PLAINTIFF.

17. At all times relevant, ALEXANDER, was tasked with investigating complaints of discrimination, sexual harassment and retaliation.

18. ALEXANDER also acted directly and personally in the allegations stated herein.

19. DEFENDANT ALEXANDER is sued here in both her individual capacity, she is also being sued as an aider and abettor.

20. At all times relevant, DEFENDANT ROSANN JAGER served as buildOn's Chief Operating Officer (COO) and or Chief Program Officer (CPO).

21. In her capacities as COO/CPO, JAGER had the ability to affect the terms and conditions of PLAINTIFF'S employment.

22. JAGER had the ability to hire, fire, promote, demote or to designate PLAINTIFF'S job assignments.

23. Upon notice, JAGER as an officer and manager of buildOn, had a legal obligation to act on PLAINTIFF'S claims of sexual harassment, discrimination and retaliation.

24. At all times relevant, JAGER, served as PLAINTIFF'S indirect supervisor.

25. JAGER also acted directly and personally in the allegations stated herein.

26. DEFENDANT JAGER is sued here in both her individual capacity, she is also being sued as an aider and abettor.

27. At all times relevant, DEFENDANT CHRISTOPHER LINDSTROM ("LINDSTROM") served as Trek Director.

28. At all times relevant, DEFENDANT LINDSTROM was PLAINTIFF'S direct supervisor.

29. At all times relevant, LINDSTROM, had the ability to affect the terms and conditions of PLAINTIFF'S employment.

30. LINDSTROM also acted directly and personally in the allegations stated herein.

31. DEFENDANT LINDSTROM is sued here in both his individual capacity, he is also being sued as an aider and abettor.

32. At all times relevant, DEFENDANT SORANGEL LIRIANO ("LIRIANO") worked as a Trek Coordinator.

33. LIRIANO also acted directly and personally in the allegations stated herein.

34. DEFENDANT LIRIANO is sued here in both her individual capacity, she is also being sued as an aider and abettor.

35. At all times relevant, DEFENDANT JOHN SOREK ("SOREK") served as Trek Director.

36. At all times relevant, SOREK, was PLAINTIFF'S direct supervisor.

37. At all times relevant, SOREK had the ability to affect the terms and conditions of PLAINTIFF'S employment.

38. SOREK also acted directly and personally in the allegations stated herein.

39. DEFENDANT SOREK is sued here in both his individual capacity, he is also being sued as an aider and abettor.

### III. FACTUAL ALLEGATIONS

### A. buildOn's Background Information

40. buildOn was founded in 1991. Its stated mission: to break the cycle of poverty, illiteracy and low expectations through service and education.

41. Since its inception, buildOn claims to provide learning programs in high schools throughout the United States and throughout the world.

42. buildOn claims to have built more than 935 schools in Burkina Faso, Haiti, Malawi, Mali, Nepal, Nicaragua and Senegal; countries amongst the lowest on the United Nations's Human Development Index.

43. At all times relevant, buildOn had an operating budget between $16 million and $18 million.

**B. Nicolas's Background Information and On-Boarding Information**

44. In or around December 2016, PLAINTIFF applied for the Trek Leader Position at buildOn.

45. Plaintiff sought to work at buildOn because the organization had built three schools in her family's home town of Les Cayes.  NICOLAS sought to "build on" that legacy since it had personally and directly impacted she and her family.

46. During the time relevant, NICOLAS had a dual Bachelors of Arts in Women's Studies and Psychology.

47. NICOLAS is fluent in Haitian Creole.

48. NICOLAS performed volunteer work in Haiti for over five years before being hired by buildOn.

49. PLAINTIFF submitted her application to work for buildOn, in or around December 1, 2016.

50. PLAINTIFF sat for two interviews with DEFENDANTS in or around December 16th and December 19th, 2016.

51. PLAINTIFF was hired to work a two-year contract as a Trek Leader with DEFENDANTS in or around December 26, 2016.

52. The Trek Leader position required candidates to have a four year degree, two years of professional experience and fluency in one of buildOn's cited languages (i.e. Haitian Creole).

53. PLAINTIFF was hired at the base salary of $36,000 without incidentals.

54. NICOLAS possessed the requisite qualifications for the Trek Leader position for which she was hired by DEFENDANTS.

55. As Trek Leader, Plaintiff was expected to perform the following functions for her assigned country of Haiti:  trek leadership; project planning; and finance and record keeping.

56. NICOLAS performed her job functions in a satisfactory fashion throughout the time of her employment.

57. NICOLAS worked for Defendants from January 6, 2017 to August 26, 2019 when she was constructively discharged.

### C.  Plaintiff's Reporting Structure

58. DEFENDANT JAGER was Plaintiff's indirect supervisor from January 2017 until NICOLAS was constructively discharged on August 26, 2019.

59. DEFENDANT ALEXANDER was VP of Human Resources and DEI from January 2017 until NICOLAS was constructively discharged on August 26, 2019.

60. DEFENDANT LIRIANO was Plaintiff's direct supervisor and Trek Director from 2017 until February 2019.

61. DEFENDANT SOREK was Plaintiff's direct supervisor and Trek Director from February 2019 until she was constructively discharged in August 2019.

**Black/African Americans and PLAINTIFF Experienced Discrimination based on her Race, Color and National Origin**

**i)      Systemic Disparities in Pay and Workload**

62. At all times relevant relevant, buildON never hired and or promoted Blacks and African Americans above the Trek Manager level.

63. At all times relevant, as VP of HR and DEI, Defendant ALEXANDER was the highest ranking and only African American to work at buildOn on the executive level.

64. At all times relevant, Plaintiff and other Blacks/African Americans were paid lower salaries and were required to perform more work than other Trek staff members.

65. At all times relevant, Whites were promoted at faster rates than African Americans/Blacks.

66. For example Courtney Lanza (LANZA) and Allyson Goida (GOIDA), both white women, were promoted from Trek Leader to Trek Manager.

67. Plaintiff was required to complete vouchers and financial paperwork for staff members who were not African American/Black.  This was despite the fact that they had more seniority, more experience and were compensated at a higher rate of pay than Plaintiff.

68. Plaintiff and African American/Black Trek staff were required to travel more than white and Trek staff who were not African American/Black.

69. Plaintiff and African Americans received harsher disciplinary actions for performance deficiencies than White and Trek staff that were not African American/Black

ii)    Plaintiff and Celestina Agyeman Subjected to Sexual Harassment: Defendants: Failed to Act; Failed to Put a Formal Investigatory Policy in Place and Retaliated [1]

70.  In November 2017, NICOLAS was assigned to work in Senegal.  During the course of this Trek/work assignment, Plaintiff was groped and harassed.

71. Plaintiff reported the incident to her onsight supervisor, who failed to act.  She also reported the incident to DEFEDNANT LINDSTROM, who also failed to act.

72. Celestina Agyeman (AGEYMAN) confronted the offending parties, but lacked the authority to take further action.

73. Upon information and belief, in 2017, buildOn did not have a written policy against sexual harassment.

74. Upon information and belief, in 2017, neither buildOn, their staff, nor their contractors received training or a sexual harassment policy.

75. Upon information and belief, in 2017, buildOn did not have written complaint process that designated a staff person to receive complaints of sexual harassment.

76. In or around September 2018, AGYEMAN was subsequently subjected to sexual harassment.

---

[1] Plaintiff references the facts in this sub-section for the sole purpose of background information. Plaintiff further understands that these incidents lie outside of the statutory period for purposes of recovery and does not seek relief for the claims in this section.

77. Outside of a pithy boilerplate statement generated after AGYEMAN'S complaint to the press, to staff-wide email, buildOn lacked any written and or formal complaint policies to address sexual harassment complaints.

78. In retaliation for her complaint, AGYEMAN was forced to quit buildOn by management.

79. Upon information and believe, AGYEMAN identifies as Black/African American of Ghanaian (African) descent and national origin.

80. Plaintiff was subjected to sexual harassment again in 2018.

81. At that time, NICOLAS was in Haiti on a trek.  While on this trek, a hotel staff person propositioned her for sexual intercourse.

82. Plaintiff reported the incident to her supervisor, who told her that she shouldn't have accepted any ice cream from the staff person.

83. Plaintiff's supervisor failed to report the incident and failed to take any further action.

84. Defendants continued to conduct business with the hotel after Plaintiff's complaint.

85. Upon information and belief, in 2018, Defendants lacked any written policy against sexual harassment.

86. Upon information and belief, in 2018, Defendants did not distribute any written policies against sexual harassment to their contractors, including hotels they utilized to house their employees.

**D. buildOn's Racially Hostile Work Environment**

87. buildOn primarily provided services to countries that have predominantly Black and Brown populations.

88. However, during the time relevant (i.e. from 2016 until 2019), buildOn's executive staff is completely and consistently virtually all white with the constant exception of their VP Of HR and DEI.

89. Plaintiff and Black staff were subjected to racism and microaggressions based on her national origin, race and color.

90. Plaintiff was regularly subjected to comments about Voodoo in Haiti.

91. Voudon aka Voodoo is considered one of the major religions in Haiti.

92. On numerous occasions, Defendants made derisive and stereotypical references about the religion to NICOLAS.

93. For example, PLAINTIFF was instructed not to organize any more trips to Voodoo ceremonies.

94. Defendants also stereotypically associated NICOLAS with the practice of Voodoo.

95. NICOLAS found these associations and stereotypes personally insulting. She also believed that she was subjected to these comments because of her claimed Haitian national origin.

96. Despite having an array of projects in Haiti, buildOn failed to educate executive and managerial staff about Haitian history and culture.

97. As a result of this ignorance, JAGER and managerial staff would use condescending language when addressing Plaintiff and other Haitian staff members and contractors.

98. When JAGER was in Haiti, she refused to let PLAINTIFF or any other Haitian staff persons speak at meetings or gatherings.

99. This was despite the fact that JAGER admitted to NICOLAS that she was a knowledgeable and vital resource when it came to intel about the unrest in Haiti and the protection of buildOn staff members.

100.   JAGER and DEFENDANTS engaged in discriminatory practices and disparate treatment with Haitian contractors.  They refused to compensate them fairly and would terminate their contracts without cause at a higher rate.

**E. Plaintiff Experiences Retaliation, Racial Discrimination and Colorism After she Refuses to Engage in Nepotism**

    i.    Nicolas Refuses to Engage in Nepotism and Rejects Pressure to host daughter of buildOn Lawyer

101.    In or around June 2018, DEFENDANTS demanded that Plaintiff host the daughter of one of buildOn's lawyers, Allyson Goida (GOIDA).

102.   When NICOLAS refused, LINDSTROM became irate.  He then began to threaten her about her living arrangements in Haiti.

103.   LINDSTROM specifically, told NICOLAS that she would need to look at lesser accommodations since she would not party with and chaperone white crony GOIDA around Haiti.

104.   Upon information and belief, JAGER also participated in this harassment and worked in concert with LINDSTROM to engage in a number of adverse employment actions that would lead to PLAINTIFF'S constructive discharge.

105.   Within a month of NICOLAS's refusal to host GOIDA, JAGER pressured NICOLAS to take a trek in Malawi.

106.   PLAINTIFF was not hired to work in Malawi, lacked fluency in the local language and did not have any familiarity with the country's customs and culture.

107.   Despite previously disclosed health issues, DEFENDANTS JAGER AND LINDSTROM insisted that Plaintiff go to Malawi from Haiti with less than a week's notice.

108.   Unbeknownst to NICOLAS DEFENDANTS JAGER AND LINDSTROM had conscripted Defendant Sorangel Liriano (LIRIANO) and Marta Diaz Mercano (DIAZ) to monitor PLAINTIFF'S every move.

109.   DEFENDANT LINDSTROM was fully cognizant of the racial, national origin and color animosities between people of Haitian and Dominican national origins.

110.   DEFENDANT LIRIANO's national origin is the Dominican Republic.

111.   DEFENDANT LIRIANO is a white light complexioned Latina.

112.   During the time relevant DEFENDANT LIRIANO was a Trek Coordinator, which was a position that held less seniority than Plaintiff's position as Trek Leader.

113.    Nonetheless, LIRIANO took issue with and reported PLAINTIFF's statements against police brutality, racial profiling and the racism embedded in the lyrics of the US's national anthem.

114.    LIRIANO was also angry that PLAINTIFF discussed the racism and colorism she experienced in the Dominican Republic with the students who were on the trek.

115.    PLAINTIFF's statements about racism and colorism were not part of her job responsibilities as Trek Leader.

116.    NICOLAS engaged in the protected activities of complaining about discrimination, police brutality and racism in or around August 2018.

117.    Haiti and the Dominican Republic are co-located on the same land mass.

118.    From the 1800s until present, the countries have had a number of race based genocides and periods of occupation.

119.    Rafael Trujillo ruled as a dictator over the Dominican Republic from 1930 to 1961.

120.    During the course of his tenure, President Trujillo implemented a policy entitled whitening.

121.    As part of whitening, Trujillo sought to rid the Dominican Republic of any Haitians and he sought to collectively lighten the complexion of the populace by encouraging immigration and mixing with white people.

122.    One of the most egregious acts of genocide that took place during the Trujillo regime occurred in 1937.  At that time, a minimum of 15,000 black Haitians were slaughtered in the Dominican Republic.

123.    Upon information and belief, these race based pogroms and killings of Black Haitians in the Dominican Republic continue to take place.

124.    Despite the extensive history of colorism/whitening under former President of the Dominican Republic Trujillo, DEFENDANT LIRIANO took issue with and reported NICOLAS for advocating against these practices and for speaking out against the ongoing racial animosities between Haiti and the Dominican Republic.

125.    DEFENDANT LINDSTROM was aware of this history and alluded to it when he reviewed the critiques submitted by LIRIANO AND DIAZ of PLAINTIFF's performance in Malawi.

126.    Despite the fact that both LIRIANO and DIAZ were lighter complexioned Latinas that ostracized and isolated PLAINTIFF culturally and linguistically,  DEFENDANTS JAGER, LINDSTROM AND SOREK placed PLAINTIFF on a Performance Improvement Plan (PIP).

127.    PLAINTIFF was put on the unjustified PIP within 5 weeks of her protected activities.

128.    The unwarranted PIP required PLAINTIFF's performance to be monitored for a period of 90 days.

129.   However, inconsistent with their policy and in an unprecedented manner, DEFENDANTS extended the PIP from 3 to 8 months.

130.   NICOLAS took all necessary steps to ensure her compliance with the PIP.

131.   She met with her superiors, took on extra work in different countries and was forced to delay a medical procedure in order to accommodate the PIP.

132.   In the latter instance, despite fainting spells, Defendants JAGER and LINDSTROM  callously disregarded PLAINTIFF's health and insisted that she continue to work.

133.   After several additional bouts of illness, NICOLAS went in for surgery.

134.   Despite being on notice of PLAINTIFF's surgical procedure, two days later, DEFENDANTS insisted that she travel abroad again.

135.   PLAINTIFF also raised the issues surrounding the protracted PIP that went against Defendants' policies to her immediate supervisor Samentha Telemanque ("TELEMANQUE") DEFENDANTS SOREK and ALEXANDER.

136.   When PLAINTIFF initially complained of discrimination TELEMANQUE discouraged her from doing so and encouraged her to resign.

137.   On another occasion when NICOLAS complained about the PIP, ALEXANDER claimed that she would investigate her complaints but failed to produce a written report.

138.   Upon information and belief, ALEXANDER failed to interview any of the students that PLAINTIFF named as witnesses.

139.   Upon information and belief, ALEXANDER failed to produce a written report or a written outcome of her investigation.

140.   ALEXANDER also failed to disclose the outcome of the "investigation" to NICOLAS.

141.   Upon information and belief, in 2019, buildOn failed to provide any training on discrimination in the work place, retaliation and or any other misconduct prohibited by the federal, state and or city human rights laws.

142.   As a result of Defendants' actions, NICOLAS was initially denied the opportunity to apply for the Trek Manager position in or around March 2019.

143.   SOREK, JAGER and ALEXANDER maintained that since NICOLAS was on a PIP she could not apply for the Trek Manager position.

144.   DEFENDANTS LINDSTROM, SOREK, JAGER and ALEXANDER insisted that NICOLAS remain on the PIP without any justification beyond the requisite 3 months to thwart her professional opportunities.

145.   NICOLAS applied for the position nevertheless and was told by SOREK that she was not selected.

146.   Instead, DEFENDANTS hired Adam Hicks (HICKS) a white male.

147.   HICKS was hired to be Trek Manager of Haiti and did not speak any Haitian Creole or French.

148.   Defendants have required Trek Managers and Trek staff to be fluent in at least one of the languages of the countries where they provide services.

149.   Upon information and belief, HICKS was not fluent in any of the listed languages.

150.   Further, Defendants sought to have NICOLAS train HICKS, who would be her supervisor and who would be compensated at a higher rate of pay than her.

151.   In or around May 2019, NICOLAS continued to complain to ALEXANDER and DEFENDANTS about the discrimination and disparate treatment to no avail.

152.   Within days of her complaints of discrimination, NICOLAS received a reduced raise.

153.   As a buildOn employee, based on the amount of time served, PLAINTIFF was entitled to a raise of 2.5%.

154.   Instead, despite being promised the full raise by her former supervisor, PLAINTIFF only received a raise of 2.0%.

155.   NICOLAS also complained about the issues surrounding her raise to DEFENDANTS.  Similar to the other incidents, PLAINTIFF's complaints were ignored.

156.    Despite having her dream job, working in the town of her family's origin, in or around July 2019, PLAINTIFF was constructively discharged and reluctantly submitted her notice of resignation.

157.    NICOLAS submitted her resignation when it became apparent that her complaints would not be investigated, that she would not be compensated fairly, that she would continue to be forced to work in conditions that would ignore her health.

158.    In callous disregard of NICOLAS's complaints, DEFENDANTS continued to exploit NICOLAS until the last day of her employment, which was on August 26, 2019.


**FIRST CLAIM OF RELIEF**
**(RACE, NATIONAL ORIGIN AND COLOR DISCRIMINATION IN VIOLATION OF 1981, NYSHRL & NYCHRL)**

159.    PLAINTIFF hereby re-alleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.


160.    PLAINTIFF is an African American/Black female of Haitian national origin.


161.    PLAINTIFF has over 2 years of experience, a four year degree and is fluent in Haitian Creole.

162.    PLAINTIFF's job responsibilities were consistently increased during the course of her tenure.

163.    Based on her knowledge of the local politics, culture and language in Haiti, Plaintiff was heavily relied upon by DEFENDANTS.

164.    PLAINTIFF was treated in a disparate fashion from her white comparator Trek Managers between 2017 and 2019.

165.    PLAINTIFF and other similarly situated racial minorities were compensated at a lower rates of pay, were promoted at slower rates and were expected to perform more job functions than white trek staff.

166.    Plaintiff was subjected to discriminatory remarks about Voodoo, Haiti, racial and darker complexioned minorities.

167.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

168.    As a proximate result of DEFENDANTS' racial discrimination against PLAINTIFF, PLAINTIFF has suffered and continues to suffer substantial losses, including the

loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

169.   As a further proximate result of DEFENDANTS' actions, PLAINTIFF has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

170.   DEFENDANTS conduct was outrageous and malicious, and was intended to injure PLAINTFF's civil rights.  Therefore, PLAINTIFF is entitled to an award of punitive damages.

## SECOND CLAIM OF RELIEF
## (HOSTILE WORK ENVIRONMENT IN VIOLATION OF 1981, NYSHRL AND NYCHRL)

171.   PLAINTIFF hereby re-alleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

172.   PLAINTIFF is an African American/Black.

173.   Upon information and belief, with the exception of DEFENDANT ALEXANDER, DEFENDANTS identify as White or Hispanic White.

174.   DEFENDANTS permitted an environment where discrimination, retaliation and harassment were permitted without consequence.

175.   DEFENDANTS did not have complaint procedures that would afford employees with recourse if they experienced discrimination, sexual harassment and or retaliation.

176.   DEFENDANTS engaged in an inadequate investigation process, despite PLAINTIFF's multiple complaints of discrimination.

177.   As a result of the foregoing, Plaintiff has lost wages, benefits, promotional and job opportunities, and bonuses.

178.   Plaintiff has also suffered mental anguish, emotional distress, loss of enjoyment of life, and has incurred damages.

## THIRD CLAIM OF RELIEF
## (RETALIATION IN VIOLATION OF 1981, NYSHRL & NYCHRL)

179.   PLAINTIFF hereby re-alleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

180.   PLAINTIFF complained of discrimination to DEFENDANTS on multiple occasions.

181.   In August 2018, PLAINTIFF complained of racism, colorism police brutality.  In response in October 2018, Defendants put her on a retaliatory PIP.

182.   Further well beyond the requisite 90 days, after 8 months had elapsed and after Plaintiff repeatedly complained, Defendants failed to provide NICOLAS with any updates as to her performance or with any information as to when the PIP would end.

183.   Between February and March 2019, Plaintiff applied for the Trek Manager of Haiti position.

184.   Between April and May 2019, Defendants refused to update her on the status of the PIP.

185.   In June 2019, Plaintiff received notification that she was passed over for the Trek Manager of Haiti position for a lesser qualified white male.

186.   Also in June 2019, Plaintiff received an unwarranted reduced pay increase. DEFENDANTS ignored PLAINTIFF's requests for an explanation.

187.   As a result of the foregoing, Plaintiff has lost wages, benefits, promotional and job opportunities, and bonuses.

188.   PLAINTIFF has also suffered mental anguish, emotional distress, loss of enjoyment of life, and has incurred damages.

## FOURTH CLAIM OF RELIEF:
## (AIDING AND ABETTING)

189.   Plaintiff, realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

190.   The underlying violations of PLAINTIFF' civil rights have been established.  The Complaint is rife with allegations where the individually named Defendants personally participated in the discriminatory and retaliatory conduct alleged.

191.    As a result of the foregoing,  Plaintiff has lost wages, benefits, promotional and job opportunities, and bonuses. Plaintiff has also suffered mental anguish, emotional distress, loss of enjoyment of life, and has incurred damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

a)  A declaratory judgment that the practices complained of herein are unlawful;

b)  An award of damages in the amount of 100,000 to compensate Plaintiff for her mental anguish, humiliation, embarrassment and emotional injury.

c)  An award of special damages in an amount of 100,000 for loss of compensation and financial harm,

d)  An award of damages for loss of compensation and financial harm including lost salary, income, fringe benefits, for a period of at least 5 years after PLAINTIFF's date of discharge, in an amount that cannot be accurately determined at this time;

e)  An award of prejudgment and post-judgment interest;

f)  An award of costs and expenses of this action together with reasonable attorneys' and experts' fees and an award of a service payment to Plaintiff; and

g)  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised in this Complaint.

27

Dated:  Queens, New York,
August 15, 2022                    By:            /s/ Special Hagan
                                                  _____
                                                  Law Offices of Special Hagan,
                                                  Esq.
                                                  196-04 Hollis Avenue
                                                  Saint Albans, New York, 11412
                                                  Telephone: (917) 337-2439
                                                  special@haganlawoffices.net
                                                  Attorney for Plaintiff