UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KATIA NICOLAS,

                                  Plaintiff,

    -against-

buildON, INC., LANELLE ALEXANDER,
ROSANN JAGER, SORANGEL LIRIANO,
CHRISTOPHER LINDSTROM, and JOHN SOREK
in their individual capacities and as aiders
and abettors,

                                Defendants.
----------------------------------------------------------------X

REPORT AND
RECOMMENDATION
22 CV 4803 (ENV)(RML)

LEVY, United States Magistrate Judge:

        Former counsel of record for plaintiff, Special Hagan, Esq., moves for a charging lien. For the reasons stated below, I recommend that the motion be denied.

## BACKGROUND

        Plaintiff Katia Nicolas ("plaintiff") commenced this action on August 16, 2022, asserting claims for workplace discrimination, hostile work environment, retaliation, and aiding and abetting. (Complaint, filed Aug. 16, 2022, Dkt. No. 1; see also Amended Complaint, filed Oct. 20, 2022, Dkt. No. 8.)[1] An initial conference was held on January 17, 2023, during which the case was referred to mediation, plaintiff was granted leave to file a second amended complaint by January 31, 2023, and defendants were directed to answer the amended complaint by February 17, 2023. (See Minute Entry, filed Jan. 17, 2023; Order Referring Case to Mediation, filed Jan. 17, 2023.) On February 21, 2023, plaintiff filed a motion to amend the

---

[1] The docket in this case is beset by confusing and unnecessary filings. Nevertheless, the court will attempt to recount the history of the case to the extent necessary to provide context for the instant motion.

amended complaint (see Motion to Amend/Correct/Supplement Amended Complaint, dated Feb. 21, 2023, Dkt. No. 30) and submitted a letter "to request an update on the status of the parties' pleadings" on February 24, 2023.  (See Letter Request for the Status of the Parties' Joint Application for Extensions to File their Respective Pleadings, dated Feb. 24, 2023, Dkt. No. 31.)  In the February 24 letter, plaintiff indicated that "[d]efendants sought an extension to file their answer, and Plaintiff consented upon the condition that she be allowed to amend her complaint.  Based on the parties' conversations on February 15, 2023, Plaintiff filed her Second Amended Complaint on February 21, 2023."  (Id.)

That same day, plaintiff filed another letter requesting an extension of time "to file her Second Amended Complaint" and for defendants to be permitted an extension to file their answer.  (Joint Motion for Extension of Time to Amend, dated Feb. 24, 2023, Dkt. No. 32.)  The motions for extensions of time to file the various pleadings were granted on February 26, 2023.  (See Order, filed Feb. 26, 2023.)  Plaintiff then filed two requests for a certificate of default against defendants on March 27, 2023.  (See Requests for Certificate of Default, filed Mar. 27, 2023, Dkt. Nos. 33, 34.)[2]  Defendants filed their answer to the second amended complaint on March 28, 2023.  (See Answer to Amended Complaint, dated Mar. 28, 2023, Dkt. No. 36.)  Defendants filed an opposition to plaintiff's request for a certificate of default on the same day, indicating that "[o]n March 14, 2023, I called Ms. Hagan and requested an extension of time to respond to the SAC. . . . Ms. Hagan responded that she was amenable to such an extension, and asked that I include in the application a request for an extension of the parties'

---

[2] Plaintiff submitted two affidavits in support of the request for a certificate of default that were filed under different titles but appear identical in substance.  (Affidavit of Special Hagan, Esq. in Further Support, dated Mar. 31, 2023, Dkt. No. 38; Corrected/Affirmation in Further Support of Plaintiff's Application to Move for Default Judgment, dated Mar. 31, 2023, Dkt. No. 39.)

2

time to conduct their mediation . . . ." (Affirmation of Evan B. Citron, Esq., dated Mar. 31, 2023, Dkt. No. 37, ¶ 10.)  Defense counsel further stated that he emailed plaintiff's counsel on March 20, 2023, proposing March 31, 2023 as the new deadline for defendants to file their answer.  (Id. ¶ 11.)

According to defendants, Ms. Hagan responded to the March 20 email stating "[t]hanks for getting this to me. . . .  As for the letter, we need to propose a new scheduling order, since these new deadlines would impact discovery.  Please provide me with some dates."  (Id. ¶ 12.)  Defendants indicate that they understood this response as consent to the proposed deadline of March 31 and that attention to deadlines and events in other matters that week delayed defendants' drafting of a proposed revised scheduling order.  (Id. ¶¶ 13, 14.)  Then, on March 27, 2023, "without any notice to Defendants or further correspondence regarding the Proposed Deadline, Plaintiff filed an application for a default judgment of $350,000."  (Id. ¶ 15.)  The affidavits submitted in support of the motion for a certificate of default indicated that plaintiff did not hear from defense counsel from March 20 to March 27, 2023, and that the application for default was filed because she had not received a response from defense counsel by March 27.  (Corrected/Affirmation in Further Support of Plaintiff's Application to Move for Default Judgment, ¶ 16.)

On April 14, 2023, the court entered a mediation status report order.  (See Mediation Status Report Order, filed Apr. 14, 2023.)  Plaintiff filed an appeal of that order on April 24, 2023.  (See Notice of Interlocutory Appeal, dated Apr. 24, 2023, Dkt. No. 40.)  A telephone conference was held on April 26, 2023, during which the motions to certify default and for leave to file a late answer were discussed.  (See Minute Entry, filed Apr. 26, 2023.)  The court noted that an answer was in fact filed and that, although late, the infraction was de minimis,

3

had not delayed the progress of this case, and appeared to be the result of an excusable mistake. (Id.)  The court granted defendants' motion for leave to file a late answer and the request for a certificate of default was denied.  (See Orders, filed May 4, 2023.)  Plaintiff appealed these orders and filed a motion for reconsideration.  (See Notice of Appeal, dated May 10, 2023, Dkt. No. 45; Motion for Reconsideration, dated May 18, 2023, Dkt. No. 46.)  The motion for reconsideration was denied on June 30, 2023.  (See Order, filed June 30, 2023.)

Plaintiff then filed a third appeal of the order denying the motion for reconsideration.  (See Notice of Appeal, dated July 17, 2023, Dkt. No. 53.)  Plaintiff's appeals were dismissed by the Second Circuit on September 27, 2023 due to lack of jurisdiction "because a final order has not been issued by the district court as required by 28 U.S.C. § 1291 and there is no other basis for an immediate appeal."  (See Mandate of USCA, dated Sept. 27, 2023, Dkt. No. 59.)  Finally, Ms. Hagan filed motions to withdraw and for a charging lien.  (See Motion to Withdraw, dated July 27, 2023, Dkt. No. 54; Motion for Charging Lien in Further Support of Motion to Withdraw, dated Aug. 9, 2023 ("Mot. for Lien"), Dkt. No. 55.)  A hearing to discuss the motions was held on October 3, 2023 and the motion to withdraw was granted on November 27, 2023.  (See Minute Entry, filed Oct. 4, 2023; Order Granting Motion to Withdraw, filed Nov. 27, 2023.)  At issue now is the motion for a charging lien.

## LEGAL STANDARD

A discharged attorney is entitled to a charging lien on any monetary recoveries obtained by the former client in the case to the extent the attorney rendered legal services.  See N.Y. JUD. L. § 475; see also Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 449 (2d Cir. 1998) (providing that § 475 governs attorneys' charging liens in federal courts sitting in New York).  "[A] charging lien does not cover all the services rendered in a particular

4

litigation, but only those services that produced the recovery sought to be charged." Pilitz v. Inc. Vill. of Freeport, 762 F. Supp. 2d 580, 583 (E.D.N.Y. 2011) (collecting cases); see also Gordon v. Shirley Duke Assocs., 611 F.2d 15, 18 (2d Cir. 1979) ("The rationale of section 475 is that an attorney should have a lien for his litigation efforts that bring a fund into existence; it is upon the fund thus created, either by judgment or settlement, that the lien is imposed."); Galvez v. Aspen Corp., 967 F. Supp. 2d 615, 628 (E.D.N.Y. 2013) ("A charging lien is enforceable only against the portion of the fund created . . . as a result of the attorney's efforts[.]") (internal quotation marks and citation omitted).[3] "The [charging] lien comes into existence, without notice or filing, upon commencement of the action or proceeding." LMWT Realty Corp. v. Davis Agency Inc., 85 N.Y.2d 462, 467 (N.Y. 1995).

However, "[i]t is well-settled that an attorney loses his [or her] right to enforce a charging lien if the attorney withdraws or is discharged for cause." Petition of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997); see also Stair v. Calhoun, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) ("attorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney does not withdraw without 'good cause' and is not discharged for 'good cause.'") (collecting cases); People v. Keeffe, 428 N.Y.S.2d 446, 405 (N.Y. 1980) ("An attorney's charging lien may be lost if he [or she] voluntarily withdraws or is discharged for misconduct").

## DISCUSSION

Ms. Hagan represented plaintiff from March 8, 2022 through July 23, 2023. (Affirmation in Support of Motion for a Charging Lien, dated Aug. 9, 2023 ("Hagan Aff."), Dkt.

---

[3] Plaintiff has not recovered any amount, as there has been no settlement or judgment entered in this case.

5

No. 55, ¶ 3.)[4] Ms. Hagan asserts that, pursuant to the retainer agreement between herself and plaintiff, she is entitled to a fourth of any recovery in this matter along with the accrued attorney's fees if the case settles without going to trial. (Id. ¶¶ 4, 14.) As discussed above, a hearing was held on October 3, 2023 and Ms. Hagan was permitted to withdraw on November 27, 2023. This case presents the complicated situation where both counsel and client ultimately sought to part from one another. Nevertheless, the issue of whether Ms. Hagan is entitled to a charging lien turns on whether her withdrawal was for good cause.

Courts within this district have held that, "[w]hile Local Rule 1.4 requires a court order to withdraw, when counsel has been discharged—and agreed to the termination—the order to withdraw should issue except under the most compelling circumstances." Casper v. Lew Lieberbaum & Co., Inc., No. 97 CV 3016, 1999 WL 335334, at *4 (S.D.N.Y. May 26, 1999). Local Civil Rule 1.4, governing attorney withdrawals, requires only that the moving attorney show "satisfactory reasons" to be relieved of his or her obligations to her client. "[A] breakdown in the attorney-client relationship can be adequate grounds for withdrawal, particularly where (as here) the client also wishes to end that relationship." Stinson v. City of New York, No. 18 CV 27, 2018 WL 11257424, at *3 (S.D.N.Y. Nov. 26, 2018). "In such a case the court need not decide 'who or what caused the irreconcilable difference,' it is enough that the relationship between attorney and client has deteriorated to the point that they cannot be expected to work together effectively on the matter." Id. (quoting Hallmark Cap. Corp. v. Red Rose Collection, Inc., No. 96 CV 2839, 1997 WL 661146, at *3 (S.D.N.Y. Oct. 21, 1997)).

---

[4] Ms. Hagan began billing plaintiff for her services on February 4, 2022. (See Invoices, attached as Ex. 2 to the Mot. for Lien, Dkt. No. 55-2.)

However, the grant of a charging lien under § 475 is governed by a "higher standard." Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc., No. 01 CV 2950, 2005 WL 1963945, at *3 (S.D.N.Y. Aug. 15, 2005).  In order to assert a charging lien after voluntarily withdrawing from a representation, the lawyer must show that he or she had "good cause" to withdraw.  Id.  If an attorney withdraws "without good and sufficient cause, his [or her charging] lien is *automatically* forfeited."  Marrero v. Christiano, 575 F. Supp. 837, 839 (S.D.N.Y. 1983) (citation omitted) (emphasis in original).  Thus, while a withdrawal motion may be granted upon a showing of irreconcilable differences between attorney and client, "[t]he charging lien issue . . . may involve investigation into who caused the differences."  Hallmark, 1997 WL 661146, at *3.

In support of the motions to withdraw and for a charging lien, the only reference made by Ms. Hagan to "cause" is that she "was discharged without cause since the Court accepted my opposition to Defendants' motion for summary judgment, and since I completed all of the work required on this case from its inception to summary judgment."  (Hagan Aff. ¶ 15.) This contention is erroneous and unavailing, as no motion for summary judgment has been filed in this case.  In further support of her motions, Ms. Hagan indicates that plaintiff "chang[ed] the terms of the [retainer] agreement" by resigning from her job against Ms. Hagan's advice which then "required additional motion practice and that exceeded the original terms of the proposed litigation budget and discussions."  (Id. ¶¶ 6, 7.)  Due to this "volume of work and the additional motion practice," Ms. Hagan asserts that plaintiff consented to pay her at an hourly rate of $350 and to be billed monthly.  (Id. ¶¶ 8, 9; see also Retainer Agreement, attached as Ex. 1 to the Mot. for Lien, dated May 9, 2022, Dkt. No. 55-1, at 1.)  Ms. Hagan acknowledges that plaintiff made payments towards those additional costs and fees.  (Hagan Aff. ¶ 9.)

Finally, Ms. Hagan asserts that, throughout the course of her representation of plaintiff, she "provided legal advice and services beyond the scope of the retainer agreement at no additional charge. For example, Plaintiff sought legal advice pertaining to employment matters unrelated to the litigation herein." (Id. ¶ 10.) None of these assertions support a finding that Ms. Hagan withdrew for good cause. See, e.g., Stair, 722 F. Supp. 2d at 258 (Counsel for plaintiffs withdrew with "good cause" due to plaintiffs' failure to pay $58,676.85 in legal fees and expenses; invoices reflected that plaintiffs had failed to pay for over two years and admitted that they could not meet the financial obligations under the retainer agreement); Lazzaro v. Manber, No. 87 CV 2153, 1989 WL 47708, at *2 (E.D.N.Y. Apr. 27, 1989) (permitting withdrawal for good cause where client refused to make *any* payments for services already rendered) (emphasis added); Solomon v. Solomon, 569 N.Y.S.2d 259, 259 (4th Dep't 1991) (finding that attorney demonstrated sufficient cause where client refused to pay disbursements in violation of the retainer agreement, failed to comply with requests to complete certain forms, and failed to oppose the attorney's motion to withdraw); Suffolk Roadways, Inc. v. Minuse, N.Y.S.2d 965, 967-68 (Sup. Ct. Suffolk Cnty. 1968) ("If the client insists upon an unjust or immoral course in the conduct of his case, or if he persists over the attorney's remonstrance in presenting frivolous defenses, or if he deliberately disregards an agreement or obligation as to fees or expenses, the lawyer may be warranted in withdrawing on due notice to the client[.]").

Moreover, despite the case being in its infancy,[5] Ms. Hagan's billing records indicate that she has logged approximately 126.9 hours in this case. (See Invoices, attached as

---

[5] It does not appear that any discovery has been undertaken since the second amended complaint was filed. The parties have not participated in mediation and there has been no motion practice, aside from the unsuccessful motion for a certificate of default.

8

Ex. 2 to the Mot. for Lien, Dkt. No. 55-2.)[6]  Email correspondence between Ms. Hagan and plaintiff purportedly shows that plaintiff owes a remaining balance of $13,613.80 for Ms. Hagan's services, on top of the $11,000 that plaintiff made in payments between January and May 2023.  (See Email, dated July 23, 2023, Dkt. No. 55-3.)  According to the retainer agreement between plaintiff and Ms. Hagan, plaintiff paid an initial payment of $10,000 ("Initial Payment") to Ms. Hagan to "cover the costs of drafting Client's complaint, the initial filing fees, and service of the initial pleadings."  (Retainer Agreement at 1.)  The retainer agreement then indicates that "[s]hould the matter proceed into discovery, Client shall render a second payment of $10,000, which shall be billed at a rate of $350 per hour.  If the services rendered and costs expended exceed this amount, Client will be notified and billed on a monthly basis."  (Id.)

Close review of the billing records and invoices submitted by Ms. Hagan reveal that Ms. Hagan (1) double-billed her client for services already paid for under the Initial Payment,[7] (2) improperly charged her client attorney time for clerical and administrative tasks,[8]

---

[6] Ms. Hagan's January 10, 2023 invoice indicates that she billed 79.9 hours from February 4, 2022 through January 10, 2023.  Her April 20, 2023 invoice indicates that she billed another 16.4 hours for entries dated January 11, 2023 through April 20, 2023.  Then, a July 22, 2023 invoice indicates that she billed another 13.4 hours for entries dated April 30, 2023 through July 22, 2023.  Finally, a July 23, 2023 indicates that she billed yet another 17.2 hours for entries dated April 26, 2023 through July 22, 2023.  (See Invoices.)

[7] For example, on top of plaintiff's Initial Payment, which covered "the costs of drafting Client's complaint, the initial filing fees, and service of the initial pleadings", the billing records submitted by Ms. Hagan demonstrate that she billed five hours for "Filing and Drafting of Original Complaint ECF Dkt. 1" on August 16, 2022 and charged her client $1,750.  (See Invoice Entry, dated Aug. 16, 2022.)  The next day, Hagan billed seven hours for "Email to Nicolas Subject: Nicolas Timeline.  Work performed on August 15-17, 2022" and charged plaintiff $2,450.  (See Invoice Entry, dated Aug. 17, 2022.)  Not only is this entry vague – it does not indicate what specific work was performed on August 15th through 17th – it is also appears duplicative of work that was already paid for by plaintiff in the Initial Payment.  Ms. Hagan subsequently billed seven hours for "Filing Amended Complaint" on October 9, 2022 and charged her former client $2,450.  (See Invoice Entry, dated Oct. 9, 2022.)  The next day, Hagan
(Continued . . .)

9

and (3) billed an overabundance of 0.1 hour services for minor tasks of minimal duration.[9]

Furthermore, Ms. Hagan's invoices contain what the court must assume to be egregious errors. For example, on June 24, 2022, Ms. Hagan billed 12.10 hours for "Email from Nicolas Subject: Review of Jorge as TC/Translator" and apparently charged her client $4,235. (See Invoice Entry, dated June 24, 2022.) Without more information, it appears that Ms. Hagan billed over twelve hours for the review of one email in one day from her former client.

---

purportedly billed another five hours for "Filing Complaint with Amendments" for which plaintiff was charged another $1,750. (See Invoice Entry, dated Oct. 10, 2022.) In another instance, Ms. Hagan billed a conference call held on April 26, 2023 with the court twice, for an hour each time. (See Invoice Entries, dated Apr. 26, 2023.) The billing records submitted by Ms. Hagan in support of the instant motion are rife with similar issues.

[8] The Second Circuit has held that district courts have "the authority and discretion to [] reduce an attorney's hourly rate for time spent on clerical tasks . . . (or block-billed time entries reflecting a mix of clerical and legal work)." Lilly v. City of New York, 934 F.3d 222, 234 (2d Cir. 2019) (finding "the district court's imposition of a 10% reduction to the fee award on account of clerical work appropriate, and certainly not an abuse of discretion"). Clerical tasks include "sending and receiving faxes, requesting and receiving medical records, serving papers, and hand-delivering courtesy copies of filings to the courthouse," id. at 234, and preparing a summons and complaint for service, ECF filings, entering dates into a calendar, and communications regarding ordering a court reporter. Torcivia v. Suffolk Cnty., 437 F. Supp. 3d 239, 253 (E.D.N.Y. 2020). This rule applies to solo practitioners like Ms. Hagan. See Lilly, 934 F.3d at 234 ("The fact that [attorney] is a solo practitioner does not entitle him to his full hourly rate as an attorney for purely clerical work.").

[9] Telltale signs of overbilling include:

> the failure to set forth evidence of the necessity of services, duplication of services, blockbilling, billing paralegal or attorney time for clerical or office administration tasks, vague entries, claiming a service that was evidently not performed, billing multiple attorneys and paralegals involved in internal conferences or discussions, excessive communication with co-counsel, [and] the practice of counsel and paralegals in billing a plethora of 0.1 hour services for minor tasks of minimal duration[.]

M.H. v. New York City Dep't of Educ., No. 20 CV 1923, 2021 WL 4804031, at *20 (S.D.N.Y. Oct. 13, 2021), aff'd sub nom. H.C. v. New York City Dep't of Educ., 71 F.4th 120 (2d Cir. 2023).

10

Finally, as mentioned above, it does not appear that any progress towards discovery in this case has been made and no legitimate motion practice has been undertaken. According to the terms of the retainer agreement, it does not appear that Ms. Hagan was entitled to shift into charging her client an hourly rate of $350. (See Retainer Agreement at 1.) This type of billing was specifically reserved for discovery, which has not occurred in this case. Moreover, $5,000 of the Initial Payment was to be allocated towards covering "the costs of any motion practice that Defendant files to have the case dismissed." (Id.) Such motion practice has not occurred either.

Ms. Hagan has not demonstrated that her withdrawal was for good cause, and the evidence before the court indicates that she herself "caused the differences" between herself and plaintiff.[10] Hallmark, 1997 WL 661146, at *3. For these reasons, I recommend that the motion for a charging lien be denied. See Marrero, 575 F. Supp. at 837, 839-40 (court allowed counsel to withdraw while initially reserving decision on charging lien application and thereafter denying lien because no "good cause" was found).

## CONCLUSION

For the reasons explained above, I respectfully recommend that Ms. Hagan's motion for a charging lien be denied. Any objection to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days. Failure to file objections within the

---

[10] Plaintiff requests that Ms. Hagan's motion for a charging lien be denied, indicating that "[a]s the client I have the right to understand the fees and what I am being charged. I also have the right to [receive] my invoices in a timely manner. Ms. Special Hagan has denied me that right. Instead of providing invoices monthly as she agreed to do so, she would send them at her convenience or when she remembered. For example, from the months of August 2022 to January 2023 I did not receive an invoice." (Letter, filed Oct. 11, 2023, Dkt. No. 63, at 1.) Furthermore, plaintiff stated that "[t]he fashion of which Ms. Special Hagan chose to withdraw as my attorney was malicious. It was abrupt and seemed retaliatory. It followed a conversation in which I requested clarification on her invoices." (Id.)

11

specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b), 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       March 11, 2024